## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD PATTERSON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 11-CV-1237 |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPARTMENT OF LABOR | : | SEPTEMBER 26, 2012 |
| ADMINISTRATOR, ET AL, | : | |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 15) and PLAINTIFF'S MOTION TO AMEND COMPLAINT (Doc. No. 39)**

## I.   INTRODUCTION

Plaintiff Ronald Patterson brings this action pro se against the State of

Connecticut Department of Labor Administrator ("Administrator"), the State of

Connecticut Employment Security Appeals Division, Lynne M. Knox in her individual

capacity and in her capacity as Chairwoman of the State of Connecticut Employment

Security Board of Review ("Board of Review"), Janice T. Drombrowski in her individual

capacity and in her capacity as an Associate Appeals Referee of the State of

Connecticut Employment Security Appeals Division, and the State of Connecticut

Judicial Branch (together "Defendants"), for violation of his procedural due process and

equal protection rights under the Fourteenth Amendment to the United States

Constitution, violation of his right to be free from retaliation for the exercise of his First

Amendment rights, and to assert the unconstitutionality of a provision of Connecticut

law.   Currently pending before the court is Defendants' Motion to Dismiss ("Mot.

Dismiss") (Doc. No. 15) and Mr. Patterson's Motion to Amend his Complaint (Doc. No.

1

39).  For the reasons that follow, the court **grants in part and denies in part** the Motion

to Dismiss and **denies** the Motion to Amend.[1]

## II.    STANDARD OF REVIEW

A district court properly dismisses a case for lack of subject matter jurisdiction

under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court lacks the

statutory or constitutional power to adjudicate it.  Makarova v. United States, 201 F.3d

110, 113 (2d Cir. 2000).  In assessing a motion to dismiss for lack of subject matter

jurisdiction, the court "accept[s] as true all material allegations in the complaint."

Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974)).  The court, however, refrains from "drawing from

the pleadings inferences favorable to the party asserting [jurisdiction]."  Id.  (citing

Norton v. Larney, 266 U.S. 511, 515 (1925)).  On a motion to dismiss pursuant to Rule

12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court

has subject matter jurisdiction over the complaint.  Makarova, 201 F.3d at 113; see also

Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); In re Joint E. & So. Dist. Asbestos

Litig., 14 F.3d 726, 730 (2d Cir.1993).  Courts evaluating Rule 12(b)(1) motions "may

resolve [ ] disputed jurisdictional fact issues by reference to evidence outside the

pleadings, such as affidavits."  Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu

Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

---

[1] The court also addresses plaintiff's Motion to Overrule Defendant's Objection to Serve a
Supplemental Complaint (Doc. No. 45).  This document is more properly labeled plaintiff's Reply to
Defendants' Objection to Plaintiff's Motion to Amend/Correct the Complaint.  Therefore, the court
**terminates** the motion and will treat it as a **Reply**.
     The court also **terminates as moot** Defendants' Motion for Extension of Time (Doc. No. 40).

III.    **FACTUAL BACKGROUND**

For a period of time prior to November 2009, Mr. Patterson received

unemployment benefits from the State of Connecticut Department of Labor Employment

Security Division.  See Compl. at ¶ 10.  In November 2009, President Barack Obama

signed an extension of unemployment compensation benefits.  Id.  Mr. Patterson's

unemployment compensation benefits during his extended benefit year were $503,

pursuant to the decision of the Administrator, which Mr. Patterson argues is final after

21 days under Conn. Gen. Stat. § 31-241(a).  Id.

On February 21, 2010, the Administrator sent Mr. Patterson a monetary

determination extending the benefit year for his Federal Emergency Unemployment

Compensation at the same amount, $503.  Id. at ¶ 11.[2]  Mr. Patterson continued to file

his claim.  Id.

On or about April 18, 2010, plaintiff retrieved his unemployment compensation

check and found that the amount had been reduced to $15.  Id. at ¶ 12.  He received no

finding from the Administrator as to why his check amount had been reduced.  Id.  Mr.

Patterson believes the amount was reduced in retaliation against him for having filed

suit in federal court against state court judges.  Id.  Mr. Patterson, nor the Superior

Court judge who eventually heard Mr. Patterson's appeal, ever received any decision

from the Administrator as to why his originally extended benefit year had been

terminated, despite state policy in favor of sending adequate and timely pre-

determination notices.  Id. at ¶ 13.

---

[2] The Complaint contains two paragraphs labeled with the number "11."  This citation refers to the second such paragraph, at page 3.

Mr. Patterson initiated an appeal of the Administrator's action reducing the amount of his unemployment compensation, but without a decision from the Administrator, he was unable to prepare a line of questioning for the appellate hearing. Id. at 14.  The Administrator did not appear at the hearing.  Id.  Mr. Patterson alleges that the Appeals Referee, Ms. Drombrowski, was biased because "she issued facts and law that could not reasonably be followed" and that the Administrator "defaulted."  Id.  At this hearing, Mr. Patterson was denied his right to cross-examine the Administrator both as a result of the Administrator's failure to issue a finding and by failing to appear at the hearing.  Id. at 15.  Mr. Patterson alleges that this pattern shows that a policy clearly exists that claimants automatically lose at appeals hearings.  Id.  He further claims that Ms. Drombrowski's position representing the Administrator created a conflict of interest and that her decision should not have any legal force.  Id.

Mr. Patterson timely appealed the decision to the Board of Review, which found no errors in Mr. Patterson's benefit rate.  Id. at 16.  The Board of Review applied no legal standard to the denial of Mr. Patterson's due process rights.  Id.  The Board of Review further erred, Mr. Patterson asserts, because promissory estoppel applies because federal law includes a right to exhaustion of unemployment benefits and does not allow a new benefit year to be established before the termination of an existing benefit year, and states do not have the right to re-determine federal benefits.  Id.

Mr. Patterson further alleges that section 22-4 of the Connecticut Practice Book is unconstitutional because the time frame established by the rule penalizes claimants, particularly pro se claimants.  Id. at 17.  In Mr. Patterson's case, it took the Board of Review over four months to come to its decision, making a rule that a claimant must

4

wait two weeks to file a Motion to Correct with an Intent to Appeal unconstitutional.  Id.

Mr. Patterson appears to have filed a motion to reopen the Board of Review's decision.

Id.

Mr. Patterson further claims that his rights to procedural due process were

violated by the protection of the Board of Review's decision by the state Superior court.

Mr. Patterson references, and the court takes judicial notice of, Mr. Patterson's

appeal of the Board of Review decision to the Connecticut Superior Court.  See

Patterson, Ronald G. v. Administrator, Unemployment Comp. Act., No. HHD-CV11-

5035331-S (Conn. Super. 2011), available at

http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV11503

5331S ("State Court Action").  Mr. Patterson filed his Petition on March 3, 2011.  See

State Court Action at Doc. No. 100.30.  Judgment entered against him on July 25, 2011.

Id. at 103.87.  An Appeal to the State of Connecticut Appellate Court was dismissed for

failure to properly file his case.  Id. at 108.00.[3]

Mr. Patterson filed this action on August 4, 2011, asking for a temporary

injunction to receive his unemployment benefits at the higher rate and alleging violations

of his federal rights to equal protection and procedural due process, brought under

section 1983 of title 42 of the United States Code.  On December 9, 2011, defendants

filed a Motion to Dismiss for lack of subject matter jurisdiction.  On April 4, 2012, Mr.

Patterson filed a Motion to Amend his Complaint, seeking to add facts explaining in

greater detail the benefit notices mailed to him and detailing the chain of events that

---

[3] Defendants assert that Mr. Patterson subsequently attempted to withdraw his case.  See See
Defendant's Memorandum in Support of Motion to Dismiss (Doc. No. 15-1) at Ex. F (including what
appears to be a Motion to Withdraw Appeal).  This document, however, is not listed on the state trial or
appellate court dockets.

have transpired since he originally filed his Complaint.  On August 9, 2012, this case was transferred to the undersigned.

## IV.   DISCUSSION

In their Motion to Dismiss, the defendants first argue, as a preliminary matter, that Mr. Patterson's claims against the various state agencies and against Ms. Knox and Ms. Drombrowski in their official capacities are barred by the Eleventh Amendment. The defendants next argue that this court lacks subject matter jurisdiction over Mr. Patterson's claims because of res judicata, the Rooker-Feldman doctrine, and qualified immunity.

### A.  Eleventh Amendment

The defendants argue that -- to the extent Mr. Patterson's complaint is made against the Administrator, the Board of Review, the State of Connecticut Employment Security Appeals Division, the State of Connecticut Judicial Branch, and Ms. Knox and Ms. Drombrowski in their official capacities -- it is barred under the Eleventh Amendment.  Under the Eleventh Amendment, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  The Eleventh Amendment has been extended to apply to suits by citizens against their own states.  See Bd. of Tr. Of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2002).  This immunity bars federal courts from entertaining suits for damages brought by a private citizen against a state without the state's consent.  Id.  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  Id.

6

Further, the Eleventh Amendment does not apply solely to suits directed at a state as a whole, but also to state agencies.  See In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) ("This jurisdictional bar also immunizes a state entity that is an 'arm of the state,' including, in appropriate circumstances, a state official acting in his or her official capacity") (citing Northern Ins. Co. v. Chatham County, 547 U.S. 189 (2006); Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Unless Eleventh Amendment immunity has been waived by the state or abrogated by Congress . . . private plaintiffs cannot sue an entity that enjoys this immunity in federal court."  Walker v. City of Waterbury, 253 Fed.Appx. 58, 60 (2d Cir. 2007).  Whether an entity is an arm of the state depends on six factors:

> (1) How it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, (5) whether the state has a veto power over the entity's actions, and (6) whether the entity's financial obligations are binding upon the state.

Id. at 60-61 (internal quotations omitted).

The defendants argue that the entities in question here are clearly "arms" of the State of Connecticut.  Mr. Patterson has offered no authority in opposition, other than to argue that, in general, "The 11th Amendment does not interrupt any constitutional and federal law violations of rights guaranteed to citizens to seek redress in this court."  See Plantiff's Reply to Defendant's Motion to Dismiss ("Pl.'s Obj. Mot. Dismiss") (Doc. No. 16) at 1.

The court agrees with the defendants.  The State of Connecticut Department of Labor is, by statute, an explicit part of the executive branch of state government.  See

Conn. Gen. Stat. § 4-38c.  The Department of Labor is clearly an arm of the State of Connecticut.  See Easterling v. Connecticut, 356 F.Supp.2d 103, 106 (D. Conn. 2005).

The Administrator of the Unemployment Compensation Act is actually the State Labor Commissioner, appointed by the state, serving at the pleasure of the governor, and charged with state functions.  See Conn. Gen. Stat. §§ 31-222(c), 4-6, 4-8, 31-2. The court sees no reason why the Administrator is not also an arm of the State of Connecticut for purposes of Eleventh Amendment immunity.

The State of Connecticut Employment Security Board of Review consists of three members appointed by the Governor, one of whom serves as chairman.  See Conn. Gen. Stat. § 31-237c(a).  The Governor may also remove members of the Board of Review for cause.  Id.  The chairperson of the Board of Review is the executive leader of the appeals division within the Board of Review.  See Conn. Gen. Stat. § 31-237d. Suits against the Board of Review, or its chairperson in his or her official capacity would necessarily implicate the State treasury.  As a result, the Board of Review and Ms. Knox, in her official capacity as chairwoman of the Board of Review, are immune from suit under the Eleventh Amendment.  Similar logic also immunizes Ms. Drombrowski in her official capacity as an Appeals Referee for the appeals division of the Board of Review.  See Conn. Gen. Stat. §§ 31-237e (establishing that such referees are paid by the State); 31-237i (stating that "[e]ach such referee shall be appointed by the board and shall be in the classified service of the state").

Mr. Patterson also brings suit against the State of Connecticut Judicial Branch. The Judicial Branch is clearly an arm of the state, and Mr. Patterson's claims against it

are also barred by the Eleventh Amendment.  See S. v. Webb, 602 F.Supp.2d 374, 384 (D. Conn. 2009).

Mr. Patterson has not supplied any caselaw, and the court has found none, that demonstrate that Congress has abrogated application of the Eleventh Amendment to suits alleging equal protection, due process, and First Amendment retaliation violations brought pursuant to section 1983 of title 42 of the United States Code, as Mr. Patterson does here.  See Wang v. Office of Professional Medical Conduct, 228 Fed.Appx 17, 19 (2d Cir. 2007) (recognizing that section 1983 does not abrogate the states' Eleventh Amendment immunity) (citing Dube v. State Univ. of N.Y., 900 F.2d 587, 594-95 (2d Cir. 1990)).

Additionally, immunity under the Eleventh Amendment applies to actions for money damages and for retroactive relief of any kind.  See Walker v. Connecticut, 106 F.Supp.2d 364, 369 (D. Conn. 2000) ("[I]n an action under 42 U.S.C. § 1983 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include any award of damages which requires payment of funds from the State Treasury.'") (quoting Edelman v. Jordan, 415 U.S. 651, 677 (1974)).  As a result, to the extent that Mr. Patterson seeks monetary damages or retroactive injunctive relief against the state defendants addressed above, his claims are barred by the Eleventh Amendment and the defendants' Motion to Dismiss is granted.  This Eleventh Amendment bar, however, does not apply to his claims against Ms. Knox and Ms. Drombrowski in their individual capacities, or to the extent he seeks prospective, equitable or injunctive relief to reinstate his unemployment benefits.

B.  Res Judicata

The defendants next argue that this court lacks subject matter jurisdiction over the claims in Mr. Patterson's Complaint because a state court has already decided those claims on the merits, thus implicating the doctrine of res judicata. See Defendant's Memorandum in Support of Motion to Dismiss ("Memo. Supp. Mot. Dismiss") (Doc. No. 15-1) at 13 ("[T]he doctrine of res judicata bars this Court from having jurisdiction over the plaintiff's complaint on the basis of the State court judgment on the merits, affirming agency decisions, where plaintiff raised or could have raised his claims in the present federal court action in State court.").

"Under the doctrine of res judicata, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Washington v. Blackmore, 468 Fed.Appx. 86, 87 (2d Cir. 2012) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). "State court judgments are to be given the same preclusive effect in federal court as they would be given in the courts of that state." Id. (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). "In considering the preclusive effect of a state court judgment on a subsequent federal action, under the Full Faith and Credit Act, 28 U.S.C. § 1738, we consult the preclusion laws of the state in which the judgment was issued." Ross v. New Canaan Envtl. Comm'n, 433 Fed.Appx. 7, 8 (2d. Cir. 2011).  In Connecticut, "'[D]octrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important that the convenience afforded by finality in legal

controversies.'"  Nestor v. Pratt & Whitney, 466 F.3d 65, 74 (2d Cir. 2006) (quoting Isaac v. Truck Serv., Inc., 253 Conn. 416, 423 (2000).

Neither party disputes that the state Superior Court entered an order granting defendants' motion for judgment on at least some of the claims brought in Mr. Patterson's State Court Action, which concerned the same general events that form the basis of this action.  According to the defendants, Mr. Patterson's State Court Action, either included, or should have included, all of the claims brought by Mr. Patterson before this court, including his federal constitutional claims.  The judgment itself, unfortunately, simply grants the motion for judgment without analysis.  It does appear that the State Court Action was, in fact, an administrative appeal from the decisions of the Board of Review.  Further, it is unclear how the trial court itself treated the various claims before it and which claims it was ruling on.  Given this uncertainty, this court will examine whether Connecticut courts would apply res judicata in the situation of an administrative appeal.

Defendants argue that courts in this circuit have already held that administrative appeals ruled upon judicially by a state court are subject to res judicata.  See Reeder v. Connecticut Unemployment Comp. Div., No. 3:97-CV-234 (DJS) (D. Conn. 1997) at Doc. No. 16.  In that case, the court considered whether a claim for punitive damages against the Employment Security Division was barred by res judicata because his claims had been argued in multiple forums, including appeals from administrative decisions to the state superior and appellate courts. Accordingly, the court found that res judicata did in fact deprive the court of jurisdiction.  "Here, the state administrative actions were challenged in state court, and the state court acted judicially; therefore, the

11

doctrine of <u>res judicata</u> bars the court from having jurisdiction over the compliant [sic]."

<u>Reeder</u>, No. 3:97-CV-234 (DJS) at Doc. No. 16, at 4.

However, the Second Circuit, in a recent opinion, appears to require a more searching analysis of the question of what claims are actually acted upon when a Connecticut court rules on the merits of an administrative appeal.  In <u>Ross</u>, the court considered whether res judicata applied to federal substantive due process and equal protection claims filed in federal court following a state court decision based on an administrative appeal of a statutory land use issue.  Though the administrative appeal relied on the same set of facts as the federal claims, the court found res judicata inapplicable:

> Applying Connecticut's precedents to the res judicata analysis here, we hold that the Superior Court's denial of plaintiff's administrative appeal does not have a claim preclusive effect on plaintiff's subsequent filing in the district court of a complaint seeking compensation for alleged constitutional violations.  Notwithstanding the plaintiff's federal claims rely on the same facts as were presented in the administrative proceedings that were before the Superior Court, in her federal complaint she submits that she suffered both financial and psychological damages as a proximate result of defendant's constitutional torts -- specifically, legal fees from her state court proceedings and losses resulting from the delay in construction as well as stress, anxiety, and emotional pain.  Under Connecticut law the Superior Court cannot award a monetary remedy in an administrative appeal.

<u>Ross</u>, 433 Fed.Appx. at 9 (citing <u>Cumberland Farms, Inc. v. Town of Groton</u>, 262 Conn. 45, 63 (2002)).  Like the plaintiff in <u>Ross</u>, Mr. Patterson is suing (at least in part) to recover monetary damages for violations of his constitutional rights.[4]

Additionally, the type of administrative appeal at issue here appears to similarly restrict what actions a Superior Court can actually take as the appeal considered in

---

[4] Mr. Patterson seeks "compensatory" and "punitive" damages, as well as attorney's fees.  <u>See</u> Compl. at 5.

Ross.  See Conn. Gen. Stat. § 31-249b (outlining the procedure for appealing a

decision of the Board of Review to Superior Court, limiting the record on appeal to the

notice of appeal, the notices of hearing, the appellate referee's findings of fact and

decision, the findings and decision of the board, and documents and other evidentiary

material accepted by the appeals referee and the Board of Review, and stipulating, "[i]n

any appeal, any finding of the referee or the board shall be subject to correction only to

the extent provided by section 22-9 of the Connecticut Practice Book).  Section 22-9 of

the Connecticut Practice Book states, under the heading "Function of the Court":

> Such appeals are heard by the court upon the certified copy of the record filed by
> the board.  The court does not retry the facts or hear evidence.  It considers no
> evidence other than that certified to it by the board, and then for the limited
> purpose of determining whether the finding should be corrected, or whether there
> was any evidence to support in law the conclusions reached.  It cannot review
> the conclusions of the board when these depend on the weight of the evidence
> and the credibility of witnesses.

Conn. R. Super. Ct. Civ. § 22-9.  As a result, appeals to the state court from the

administrative actions of the Board of Review are relatively limited and circumscribed.

The state courts have taken at times somewhat conflicting positions on the types

of claims that are appropriate for them to consider when reviewing appeals from the

Board of Review.  Compare Fullerton v. Administrator, Unemployment Compensation

Act, 280 Conn. 745, 761-62 (2006) ("There is no language in [section 31-249b] or any

other employment compensation statute suggesting that the court may hear claims on

appeal from the board over which the board lacks jurisdiction . . . Although we conclude

that the trial court did not have jurisdiction to consider the plaintiffs' claims of

discrimination on appeal from the board, they were not without an alternative forum.

They could have brought an independent action in Superior Court."); with Addona v.

Administrator, Unemployment Compensation Act, 121 Conn.App. 355, 363 (Conn. App. 2010) (determining that procedural due process is a requirement of adjudicative administrative hearings and remanding to the trial court for reconsideration of the state due process claim); Molnar v. Administrator, Unemployment Compensation Act, 239 Conn. 233, 234-35 (1996) (affirming decision of state trial court in administrative appeal raising an equal protection claim relating to the enactment of a statute).

Defendants might argue that the federal constitutional claims Mr. Patterson filed before the state trial court, assuming he did file them, constituted, in effect, an independent action, and that judicial economy favors avoidance of the filing of two separate lawsuits.[5]  However, given Mr. Patterson's pro se status, the Connecticut Supreme Court's determination in Fullerton that restricts state trial courts from hearing, in administrative appeals, claims over which the board lacked jurisdiction, and this circuit's decision in Ross that actions for money damages are outside the scope of an administrative appeal before a trial court, this court will not apply res judicata to Mr. Patterson's claims to the extent that they are federal constitutional claims brought for monetary damages[6] or determinations of the constitutionality of a provision of the Connecticut Practice Book.

---

[5] The court notes that it does not have, and the parties have not provided, a copy of the petition Mr. Patterson actually filed in state court.  The court declines to assume what Mr. Patterson actually filed based on an incomplete record and a state court judgment that granted defendants' motion for judgment without analysis.

[6] The court also notes that Mr. Patterson, in his Complaint, does not specify how he was actually damaged by the events he describes other than to describe the continued loss of his unemployment checks.  While this omission might be fatal to Mr. Patterson's claims, the defendant's Motion to Dismiss does not ask this court to address whether Mr. Patterson has properly stated a claim.

C.  Rooker-Feldman

The defendants next argue that the Rooker-Feldman doctrine deprives this court of subject matter jurisdiction over Mr. Patterson's claims.  The Rooker-Feldman doctrine essentially bars federal courts from reviewing state court judgments by stripping federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.  See Hoblock v. Albany County Bd. of Elections, 422, F.3d 77, 84 (2d. Cir. 2005); Hernandez v. Palisades Collection LLC, 3:06-CV-1382, 2008 WL 4426890, *2 (D. Conn. Sept. 29, 2008).

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ("Exxon Mobil"), the Supreme Court significantly curtailed the application of the Rooker-Feldman doctrine.  Under this formulation, the Rooker-Feldman doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Id. at 284; see also Safferstein v. Lawyers' Fund for Client Protection, 142 Fed.Appx. 494, 496 (2d. Cir. 2005).

Four requirements must be met before the Rooker-Feldman doctrine applies: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites district court review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced."  Davis v. Cowin, No. 9:10-CV-0081 (DNH/GHL), 2011 WL 4655858, *4 (N.D.N.Y. 2011) (citing Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005); Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009).

The Rooker-Feldman doctrine clearly applies to Mr. Patterson's claims to the extent he seeks an order from this court overturning the determination of the state court to grant a motion for judgment as to Mr. Patterson's appeal of the judgment of the Board of Review and the Appeals Referee.  See Compl. at 5.  Not only did Mr. Patterson lose in state court on his appeal, but he complains of injuries as a result of the determination, namely, the loss of his unemployment benefits.  Mr. Patterson invites this court to review and reject the determination of the state court, and the judgment was rendered before this action commenced.  Therefore, to the extent that any kind of injunctive relief remained possible after this court's ruling as to the res judicata issue, such relief is barred under Rooker-Feldman.

However, Mr. Patterson's federal equal protection, procedural due process, and First Amendment retaliation claims are situated slightly differently.[7]  As the court discussed above, it is far from clear that the trial court itself had the authority to decide such claims, even if Mr. Patterson had in fact raised those issues before it.  However, even that much is not clear.  The defendants assert that Mr. Patterson pled his federal claims before the state court, but they did not attach, and the court was unable to locate on the docket, a copy of Mr. Patterson's original Petition.  Even if Mr. Patterson had pled his federal claims, it does not appear that the state court addressed these issues separately.  Indeed, the state court decision granting the defendants' Motion for

---

[7] The court does note that merely raising constitutional claims in a subsequent action does not exempt a litigant from the Rooker-Feldman doctrine.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (holding that federal courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); see also Castiglioni v. Papa, 423 Fed.Appx. 10, 13 (2d Cir. 2011) ("Castiglione cannot avoid application of the Rooker-Feldman doctrine simply by presenting in federal court a legal theory not raised in state court, for example, by framing her claims under [sections] 1983 or 1985.").

Judgment as to Mr. Patterson's appeal was done without analysis.  <u>See</u> Memo. Supp. Mot. Dismiss at Ex. D.

The court concludes that, even if Mr. Patterson raised these issues in his state court petition, they either could not be or were not acted on, so there is no state court judgment to reject as to these claims.

However, given Mr. Patterson's <u>pro</u> <u>se</u> status, in addition to the superior court's apparent lack of jurisdiction over claims for monetary damages and the limited and unclear nature of the state court decision, this court concludes that Mr. Patterson's constitutional claims, to the extent that they do not implicate overturning the state court judgment, are not barred by <u>Rooker-Feldman</u>.

D.  <u>Qualified Immunity</u>

Lastly, defendants ask this court to find that it is deprived of subject matter jurisdiction because the remaining defendants are entitled to qualified immunity. Though defenses of qualified immunity are typically raised on summary judgment, this circuit has explicitly allowed such defenses in the context of a motion to dismiss.  <u>See</u> <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004).  However, "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment."  <u>Id</u>. (quoting Moore's Federal Practice § 56.30[3][b].  This is because "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  <u>Id</u>.[8]

---

[8] The defendants raise qualified immunity under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  However, other courts have addressed similar claims under Rule 12(b)(6).  <u>See</u> <u>McKenna</u>, 386 F.3d at 436.

"In determining the issue of qualified immunity, 'courts engage in a two-part inquiry: whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'"  Talley v. Brentwood Union Free School Dist., 728 F.Supp.2d 226, 234 (E.D.N.Y. 2010) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d. Cir 2010).

While hardly a model of artful and thorough pleading, Mr. Patterson's Complaint asserts that the remaining individual defendants acted out of spite against him, engaged in retaliation against him for attempting to enforce his rights in state and federal court, acted in a biased manner, and violated procedural requirements.  The court accepts these claims as true, construing Mr. Patterson's pro se complaint liberally.  "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments they suggest."  Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quotations omitted).  Despite the solicitude the court must offer a pro se litigant, this court finds that the facts alleged in the Complaint fail to make out violations of constitutional rights.

As to the First Amendment retaliation claim, the court finds that Mr. Patterson fails to make out a violation of a constitutional right.  Mr. Patterson's Complaint merely alleges that "defendants all acted out of spite on the basis he [sic] enforcing his rights in state and federal courts" and that "he was retaliate [sic] against because he filed suit against state court judges in Ronald Patterson vs. Chase T. Rodgers et al in federal court 10-0579 whose [sic] avoiding deposition."  Compl. at 1, 3.

"In order for a lawsuit to constitute First Amendment protected speech, the lawsuit itself must consist of a matter of public concern."  Kamholtz v. Spike, No. 11-CV-6094L, 2011 WL 3235672, *2 (W.D.N.Y. 2011) (citing Ruotolo v. City of New York, 514 F.3d 184, 190 (2d Cir. 2008)) ("Because Ruotolo's [prior] lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim").  Here, Mr. Patterson has not alleged that his prior lawsuit or lawsuits addressed matters of public concern, as opposed to personal grievances.  Accordingly, the court cannot say that Mr. Patterson has made out a constitutional violation by the defendants, and the court grants the Motion to Dismiss as to this federal claim.

As for the equal protection claim, the court finds that Mr. Patterson has likewise failed to make out a violation of a federal right.  "The Equal Protection Clause requires the government to treat all similarly situated people alike."  African Trade & Information Ctr., Inc. v. Abromaitis, 294 F.3d 355, 362 (2d Cir. 2002).  "'Traditionally, the Equal Protection clause of the Fourteenth Amendment protects against [classification-based] discrimination.'"  Lavoie-Francisco v. Town of Coventry, 581 F.Supp.2d 304, 309-10 (D. Conn. 2008) (quoting Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356, 366 (D. Conn. 2007)).  Here, Mr. Patterson does not allege membership in a protected class.

This leaves two potential theories that may sustain an equal protection claim. First, Mr. Patterson may be asserting a "class of one" equal protection claim based on Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Next, he may be asserting a "selective enforcement" claim under LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir.

1980).  Mr. Patterson fails to make out a constitutional violation under either theory, thereby entitling Ms. Knox and Ms. Drombrowski to qualified immunity.

"As the Supreme Court has recently reaffirmed, equal protection claims can be brought by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  Id.  (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted)).  In Olech, the court sustained an equal protection claim where the plaintiff alleged that the defendants' actions were irrational and arbitrary and were motivated by ill-will resulting from the filing of an unrelated lawsuit.  See Olech, 528 U.S. at 563.  Here, Mr. Patterson appears to have satisfied this hurdle by alleging arbitrary retaliation against him for the filing of a lawsuit.  Further, the Second Circuit has determined that Olech-based equal protection rights were clearly established even before Olech was decided.  See Cobb v. Pozzi, 363 F.3d 89, 111 (2d Cir. 2003).

However, the standards of an equal protection claim, even under Olech, still require some allegation that a plaintiff was treated differently from other similarly situated individuals.  Here, Mr. Patterson has failed to allege any facts showing that he was treated differently from other similarly situated individuals.  See Skiff v. Colchester Bd. of Educ., 514 F.Supp.2d 284, 292 (D. Conn. 2007) ("To prove the first element, 'the level of similarity between [a] plaintiff[] and the [comparators] must be extremely high,' even to the point of being 'prima facie identical in all relevant respects.'") (quoting Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)).  Mr. Patterson does not offer any other cases as supporting evidence, much less evidence from similarly situated

cases.  Accordingly, the court cannot say that Mr. Patterson has made out an equal protection violation.  If Mr. Patterson chooses to replead, some allegation of similarly situated individuals being treated differently is necessary to defeat qualified immunity.

Mr. Patterson also fails to make out a constitutional violation under the "selective enforcement" theory.  "To succeed in such an equal protection action, plaintiffs in this circuit must show both '(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religioun, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure  person.'" Lavoie-Francisco, 581 F.Spp.2d at 314 (quoting Harlan Assocs. v. Incorp. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).  Mr. Patterson has not alleged that he was treated differently from similarly situated individuals.  As a result, this court cannot say that he has made out a violation of a constitutional right, and Ms. Knox and Ms. Drombrowski are entitled to qualified immunity on this claim.  Accordingly the court grants the motion to Dismiss as to this claim..

Lastly, the court turns to whether violations of Mr. Patterson has made out a violation of his federal procedural due process rights The procedural due process allegations as to the remaining defendants include a claim that he was not provided a finding from the Administrator as to why his benefits were reduced, he was not provided with the Administrator's decision prior to a hearing on his case, that the Administrator did not appear at the hearing, that he was unable to cross examine the Administrator at the hearing, that the recalculation of his benefit rate had no basis in law, and that a requirement under Connecticut Practice Book section 22-4 -- requiring a motion to

correct the finding of the Review Board to be made within two weeks of an appeal to the superior court -- was inherently unfair to many litigants.  See Compl. at 3, 4.

Mr. Patterson has not made out a violation of his federal procedural due process rights as to the motion to correct the finding of the Review Board.  Indeed, in 1996, the Appellate Court of Connecticut reversed a trial court that reviewed facts underlying a decision of the Board of Review because plaintiffs in that case had failed to follow the specific two-week time period for filing a motion to correct the record with the Board of Review.  See Calnan v. Administrator, Unemployment Compensation Act, 43 Conn.App. 779, 785 (Conn. App. 1996).  Mr. Patterson has failed to identify, and the court has not found, any evidence that allegation as to an alternative time period for filing a motion to correct the record constituted a federal procedural due process right.

As for Mr. Patterson's allegation that he did not receive notice, he is on firmer ground.  Under Connecticut's agency regulations:

> Where the Administrator detects that an individual has been overpaid benefits as a result of a clerical or computational error in the processing of any weekly claim for benefits, the Administrator shall notify the individual that he has been charged with an overpayment of such benefits, the amount of the overpayment and that he has a right to a hearing to be held by the Administrator . . .

Conn. Agencies Regs. § 31-273-2(d).  Mr. Patterson alleges that he never received such notice.  While it appears that Mr. Patterson attached that very notice to his Complaint, the document is sufficiently vague that the court will refrain from determining that Mr. Patterson has undermined his own claim with his own exhibit.  Because of the ambiguity as to what Mr. Patterson actually received, and because notice is a clear prerequisite for adequate use of the state process, and resolving all ambiguities in Mr.

Patterson's favor, the court cannot say that Mr. Patterson failed to make out procedural due process claim or that such a right was not clearly established at the time.

However, this does not end the court's inquiry. This failure to provide notice by the Administrator prior to the commencement of the appeals process does not implicate Ms. Knox or Ms. Drombrowski, who exercise authority in an appellate capacity. As a result the court concludes that Mr. Patterson has not made out a constitutional procedural due process violation against Ms. Knox or Ms. Drombrowski in their individual capacities, and grants their Motion to Dismiss.

## V.  CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss (Doc. No. 15) is granted in part and denied in part. Claims against all of the state defendants, and Ms. Knox and Ms. Drombrowski in their official capacities, are dismissed. Additionally, Mr. Patterson's claims for injunctive relief are also dismissed, except for any claim for prospective relief to reinstate his benefits. Further, Mr. Patterson's federal constitutional claims against Ms. Knox and Ms. Drombrowski are dismissed. However, the Motion to Dismiss is denied solely as to Mr. Patterson's federal constitutional procedural due process claim for prospective, injunctive relief as to the Administrator. Plaintiff's Motion to Amend his Complaint (Doc. No. 39) adds no facts relevant to his surviving claim and is therefore denied.

In light of Mr. Patterson's pro se status, the court will grant an additional right to replead to address the deficiencies outlined in this Ruling. The court does not grant Mr. Patterson leave to replead his federal constitutional claims against the state defendants

or against Ms. Knox and Ms. Drombrowski in their official capacities because these claims fail as a matter of law under the Eleventh Amendment.

Additionally, Defendants' Motion for Extension of Time (Doc. No. 40) is terminated as moot.  Plaintiff's  Motion to Overrule Objection to Serve a Supplemental Complaint (Doc. No. 45) is **terminated** to the extent that it is labeled as a motion, and it will be treated as a reply brief and the clerk is directed to correct the entry to so describe it.

**SO ORDERED.**

Dated at New Haven, Connecticut this 26th day of September, 2012.


_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge