UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD PATTERSON | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:11-CV-1237 (JCH) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | MARCH 17, 2014 |
| DEPARTMENT OF LABOR | : | |
| ADMINISTRATOR, ET AL., | : | |
|    Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 97)**

**I.     INTRODUCTION**

Plaintiff Ronald Patterson originally brought this action pro se against the State of Connecticut Department of Labor Administrator ("Administrator"), the State of Connecticut Employment Security Appeals Division, Lynne M. Knox in her individual capacity and in her capacity as Chairwoman of the State of Connecticut Employment Security Board of Review ("Board of Review"), Janice T. Drombrowski in her individual capacity and in her capacity as an Associate Appeals Referee of the State of Connecticut Employment Security Appeals Division, and the State of Connecticut Judicial Branch (together "Defendants").  Patterson alleges violations of his procedural due process and equal protection rights under the Fourteenth Amendment to the United States Constitution, violation of his right to be free from retaliation for the exercise of his First Amendment rights, and to assert the unconstitutionality of a provision of Connecticut law.

The court previously granted Defendants' Motion to Dismiss ("MTD") (Doc. No. 15) with respect to all claims except "Mr. Patterson's federal constitutional procedural due process claim for prospective, injunctive relief as to the Administrator."  MTD at 23.

1

Currently pending before the court is Defendant Administrator's Motion for Summary Judgment ("MSJ") (Doc. No. 97) on the ground that the "Administrator did not violate plaintiff's procedural due process rights by the notice of redetermination of plaintiff's benefit rate to emergency benefits under federal law."  MSJ at 1.

For the following reasons, the court grants the Administrator's Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation citations and marks omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  In order to defeat the motion for summary judgment, he must present such evidence as would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is

sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

### III.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

Mr. Patterson received unemployment compensation benefits, effective July 6, 2008, at a weekly benefit rate of $483.[1]  Defendants' Local Rule 56(a)(1) Statement ("Defs.' L.R. 56(a)(1) Stmt.") at ¶ 1; Plaintiff's Local Rule 56 (a)(2) ("Pl.'s L.R. 56(a)(2) Stmt.") at ¶ 1.  Pursuant to Connecticut law, he received 26 weeks of benefits, after which he began receiving benefits under the federal emergency unemployment compensation ("EUC") program, as provided by the federal Supplemental Appropriations Act.  Id.  The federal Supplemental Appropriations Act 2008, Title IV, P.L. 110-252, § 4001(b), provides emergency unemployment compensation to any individual who has exhausted all rights to regular unemployment compensation under state or federal law in a given benefit year.  P.L. 110-252, § 4001(b).  The Act defines exhaustion of benefits as occurring when "(1) no payments of regular compensation can be made . . . because such individual has received all regular compensation available to such individual based on employment or wages during such individual's base period; or

---

[1] According to Conn. Gen. Stat. Ann. § 31-231a, the benefit rate is equal to one twenty-sixth of the average of total wages paid during the two quarters of the current benefit year's base period in which wages were highest.  Conn. Gen. Stat. Ann. § 31-231a.

(2) such individual's rights to such compensation have been terminated by reason of the expiration of the benefit year with respect to which such rights existed." P.L. 110-252, § 4001(c).[2]  Mr. Patterson was paid a total of 94 weeks on his claim through the weekend of April 17, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 1; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 1.

On February 21, 2010, the Administrator mailed Mr. Patterson a monetary determination extending his July 6, 2008 EUC claim at his then-current weekly benefit rate.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 2; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 2.  The determination referred to a benefit year from July 6, 2008 through September 27, 2008, and a base period from April 1, 2006 to March 31, 2007, with quarterly wages within that base period used to determine the benefit rate.  Id.  The notice showed a continuation of the $483 weekly benefit rate for another 53 weeks, with a maximum benefit of $25,599.  Id.

Subsequently, the Administrator mailed Mr. Patterson two additional monetary determinations on March 15 and March 16, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 3-4; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 4.  The Administrator concedes that the former determination was sent in error.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 3.  The latter determination established a new benefit year for regular Connecticut unemployment compensation, effective January 3, 2010, and ending January 1, 2011.  Id. at ¶ 4.  The

---

[2] In his Local 56(a)(2) statement, Mr. Patterson references the Unemployment Compensation Extension Act of 2010, P.L. 111-205, and argues that this Act entitles him to continue receiving emergency benefits at his previous, higher rate of $483, instead of the redetermined $15 rate.  Pl.'s L.R. 56(a)(2) Stmt. at ¶¶ 8-9.  While the court will not comment on the substance of the Act, it notes that amendments made by the Act apply only "to individuals whose benefit years . . . as amended by this section [entitled "Coordination of Emergency Unemployment Compensation with Regular Compensation"], expire after the date of enactment of this Act."  Unemployment Compensation Extension Act of 2010, PL 111-205, July 22, 2010, 124 Stat 2236 (emphasis added).  The Act was approved July 22, 2010, long after Mr. Patterson's benefit year, effective July 6, 2008, expired.  As such, the Act does not entitle him to a continuation of his emergency benefits at the higher rate.

base period was January 1, 2009 to December 31, 2009, with quarterly wages within that base period used to determine the weekly benefit rate of $15.[3]  Id.  Benefits were extended for 26 weeks, with a maximum benefit of $390.  Id.  Mr. Patterson called the Administrator upon receiving the determination,[4] but continued to receive benefits at the previous $483 weekly rate.  Id.; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 4.  The Administrator concedes it mistakenly paid Mr. Patterson emergency benefits[5] at the higher weekly rate through April 18, 2010, but is not charging Mr. Patterson for the overpayment of those benefits.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 10-11.

On April 23, 2010, the Administrator mailed Mr. Patterson another monetary determination for the Connecticut state unemployment claim effective January 3, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 6; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 5.  The determination was for EUC benefits, effective April 18, 2010.[6]  Defs.' L.R. 56(a)(1) Stmt. at ¶ 6.  The determination referred to a benefit year from April 18, 2010 to January 1, 2011, a base

---

[3] The $15 benefit rate was based on Mr. Patterson's earnings of $639.72 in the fourth quarter of 2009.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 9.  Mr. Patterson does not dispute this amount, which is the amount used to determine his benefit rate for his claim effective January 3, 2010.  Id. at ¶ 6.

[4] While the Administrator maintains that it told Mr. Patterson he would receive another monetary determination when he called, Mr. Patterson denies receiving such information.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 4; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 4.

[5] He was, in fact, entitled at that time only to regular benefits in a new benefit year, effective January 1, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 11.

[6] According to the Administrator, the April 23, 2010 claim for emergency benefits resulted from the exhaustion of Mr. Patterson's regular Connecticut state benefits claim, effective January 1, 2010, to which he was entitled maximum benefits of $390.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 4-5.  Because Mr. Patterson continued to receive benefits at the previous, higher rate through April 17, 2010, the Administrator transferred those payments to his new regular unemployment compensation claim, thus exhausting that claim.  Upon exhaustion, Mr. Patterson was then entitled to emergency unemployment compensation at his newly determined Connecticut state benefit rate.  Id. at ¶¶ 5-7.

Mr. Patterson does not address this issue in his papers.

5

period from October 1, 2008 to September 30, 2009, with quarterly wages within that base period used to determine the benefit rate.  Id.  The weekly benefit rate was $15 for an additional 20 weeks, with a maximum benefit of $300.  Id.

On April 29, 2010, Mr. Patterson appealed the Administrator's redetermination of his benefit rate, as documented in the April 23, 2010 determination.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 13; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 7.  The Referee held a hearing on June 15, 2010 and, on June 29, 2010, reaffirmed the Administrator's determination of the new benefit rate and dismissed Mr. Patterson's appeal.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 13; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 7; Patterson v. Administrator, Case No. 1901-AA-10, Decision of Appeals Referee dated June 29, 2010.  Mr. Patterson was present at the hearing and was given an opportunity to present evidence.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 13; Pl.'s L.R. 56(a)(2) Stmt. at ¶ 7.

On July 6, 2010, Mr. Patterson appealed the Referee's decision to the Board of Review, which affirmed the Referee's decision and dismissed Mr. Patterson's appeal on August 27, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 14; Patterson v. Administrator, Case No. 1256-BR-10, Decision of the Board of Review, August 27, 2010.  Mr. Patterson subsequently filed a motion to reopen the Board's decision on September 24, 2010; this motion was denied on December 8, 2010.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 15; Patterson v. Administrator, Case No. 1356-BR-10, Decision of the Board of Review on Claimant's Motion to Reopen dated December 8, 2010.  Mr. Patterson appealed this denial to the Connecticut State Superior Court, which dismissed his appeal on July 25, 2011.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 15.  He then appealed the Superior Court dismissal to the Connecticut State Appellate Court, which dismissed his appeal on August 29, 2011, for

failing to file certain papers necessary to pursue his appeal. Id.; Appellate Court Order dated August 29, 2011.

## IV. DISCUSSION

The only remaining claim in this case is "Mr. Patterson's federal constitutional procedural due process claim for prospective, injunctive relief as to the Administrator." MTD at 23. Mr. Patterson claims he has been deprived of "due process of [an] evidentiary hearing and/or judicial determination." Pl.'s L.R. 56(a)(2) Stmt. at ¶ 6. Furthermore, he claims that the February 21, 2010 monetary determination was final after 21 days. Id.

Foremost, the court notes that Mr. Patterson has been given adequate due process under the United States Constitution. Under Mathews v. Eldridge, a hearing prior to the termination of benefits[7] is not required for due process to be satisfied. 424 U.S. 319, 349 (1976). The Court in Mathews stated that the "essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." Mathews, 424 U.S. 348-49 (internal quotations and citations omitted). As

---

[7] The court finds Mr. Patterson's unemployment compensation claim analogous to the disability benefits claim discussed in Mathews. The Court in Mathews distinguished recipients of disability benefits from recipients of welfare benefits, the latter of whom are discussed in Goldberg v. Kelly, 397 U.S. 254 (1970). The Court in Mathews noted that while "due process requires an evidentiary hearing prior to a temporary deprivation [of welfare benefits]," there is a key difference between recipients of welfare assistance and disability benefits—namely, that welfare recipients are "persons on the very margin of subsistence." Mathews, 424 U.S. 340. The same cannot be said for recipients of disability benefits, and, by the same logic, recipients of unemployment assistance. Thus, the court finds Mathews to be controlling in this case.

detailed above, Mr. Patterson has been given adequate notice of the redetermination of his benefits, and though he is not constitutionally entitled to a hearing prior to the termination of his benefits, he has been given ample "opportunity to present [his] case" through his numerous hearings and appeals. Mathews, 424 U.S. 349. As such, the court finds that the procedure given to Mr. Patterson complies with the due process owed him under the United States Constitution.

Connecticut law also supports the Administrator's redetermination of Mr. Patterson's benefit rate. As established by Connecticut law, an individual's benefit year extends for 51 weeks following an initiating claim: "An individual's benefit year shall commence with the beginning of the week with respect to which the individual has filed a valid initiating claim and shall continue through the Saturday of the fifty-first week following the week in which it commence." Conn. Gen. Stat. Ann. § 31-230. Thus, after 51 weeks, the benefit year for Mr. Patterson's July 6, 2008 claim ended. Any new earnings after this end date would go towards a new benefit year. In affirming the Administrator's redetermination of Mr. Patterson's benefits, the Referee noted that the decision "was explicitly premised on the requirement of federal law for redetermination of his benefit rate for federal emergency benefits on the basis of his eligibility for regular state benefits in a new benefit year at a redetermined rate." Defs.' L.R. 56(a)(1) Stmt. at ¶ 13. Neither party disputes Mr. Patterson earned $639.72 in the fourth quarter of 2009, which is the amount used to determine his benefit rate for his claim effective January 3, 2010. Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 6, 9.

Even though Mr. Patterson does not dispute his fourth quarter earnings in 2009, he asserts that the erroneous monetary determination of February 21, 2010 mailed by

the Administrator—stating a $483 benefit rate—was final after 21 days. Pl.'s L.R. 56(a)(2) Stmt. at ¶ 3. Conn. Gen. Stat. Ann. § 31-241 states that "[t]he decision [determining claims and benefits] of the administrator shall be final and benefits shall be paid or denied in accordance therewith unless the claimant or any of such employers, within twenty-one calendar days after such notification was mailed to his last-known address, files an appeal from such decision and applies for a hearing." Conn. Gen. Stat. Ann. § 31-241. The statute makes clear that the claimant has 21 days to file an appeal of the Administrator's decision if he or she disagrees with the initial determination, but it does not say that the Administrator is barred from redetermining benefits after 21 days. To the contrary, Conn. Gen. Stat. Ann. § 31-243 says that the Administrator has continuous jurisdiction over the case.[8] As such, the court rejects Mr. Patterson's contention that the Administrator's February 21, 2010, determination was final after 21 days.

Furthermore, an examination of the record reveals that Mr. Patterson has been given more than adequate due process, with ample opportunities to have his case heard. Under Connecticut law, when the Administrator determines a claimant's eligibility for benefits, it shall do so "promptly," and "[n]otice of the decision and the reasons therefor shall be given to the claimant." Conn. Gen. Stat. Ann. § 31-241. Additionally, if a determination is appealed, "a referee shall promptly hear the claim, de

---

[8] "Where the appellate tribunal has not taken jurisdiction, upon his own initiative, or upon application of any party in interest, the administrator, or the examiner designated by him, may, at any time within six months after the date of the original decision, or within such other time limits as may be applicable under section 31-273, review an award of benefits or the denial of a claim therefor, in accordance with the procedure prescribed in respect to claims, and may issue a new decision, which may award, terminate, continue, increase or decrease such benefits." Conn. Gen. Stat. Ann. § 31-243 (emphasis added).

novo, and render a decision thereon. . . . [N]otice, by mail or otherwise, of the time and place of such hearing shall be given each interested party not less than five days prior to the date appointed therefor.  The parties, including the administrator, shall be notified of the referee's decision, which notification shall be accompanied by a finding of the facts and the conclusions of law upon which the decision is based." Conn. Gen. Stat. Ann. § 31-242.

     The Administrator has followed its statutory mandate.  Mr. Patterson received notices on March 16 and April 23, 2010, with an explanation of the determination, and when Mr. Patterson appealed these determinations, he was given a hearing in front of the Referee, with notification of the decision, including all findings of facts and conclusions of law.  Patterson v. Administrator, Case No. 1901-AA-10, Decision of Appeals Referee dated June 29, 2010.  Furthermore, nowhere in the statute does it say the Administrator had to be present at the hearing.  Conn. Gen. Stat. Ann. § 31-242.  Upon his appeal to the Board of Review, Mr. Patterson received yet another explication of the Board's findings of fact and conclusion of law.  Patterson v. Administrator, Case No. 1256-BR-10, Decision of the Board of Review, August 27, 2010.  He also received a decision from the Board of Review explaining its decision not to reopen the August 27, 2010, decision.  Patterson v. Administrator, Case No. 1356-BR-10, Decision of the Board of Review on Claimant's Motion to Reopen dated December 8, 2010.  Mr. Patterson also had two additional appeals, to the Connecticut state Superior and Appellate Courts.  Given the many notifications and lengthy procedure and process afforded Mr. Patterson, this court cannot find that Mr. Patterson's federal constitutional procedural due process rights were violated.

**V.     CONCLUSION**

For the foregoing reasons, the Administrator's Motion for Summary Judgment (Doc. No. 97) is GRANTED.  Plaintiff's Motion to Speed this Process (Doc. No. 108) is terminated as moot.

**SO ORDERED.**

Dated at New Haven, Connecticut this 17th day of March, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge